[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 25, 1988, the defendant Realty Capitol Associates ("RCA"), through its managing partner, Mark Germain, executed an unsecured promissory note ("note") in the amount of $250,000 from the plaintiff, First Constitution Bank ("FCB"). RCA defaulted under the note by failing to pay the monthly installments of principal and interest due on January 1, 1990 and each month thereafter.
FCB brought this one count complaint to collect the outstanding balance under the note on September 11, 1990 against RCA and its partners. First Federal Bank ("FFB") became the holder and owner of the note, as well as the substituted plaintiff in this action, in July 1993, when it purchased the note from the Federal Deposit Insurance Corporation ("FDIC"), who had become receiver for FCB. Webster Bank ("Webster") succeeded FFB as the plaintiff in this action in January of 1997, after FFB merged with Webster. CT Page 1912
On January 21, 1997, the defendant Mazza filed a disclosure of defenses which listed ten defenses Mazza intended to plead. On February 3, 1997, the defendant Mazza filed his answer and special defenses to the plaintiffs complaint.
The plaintiff, Webster, filed this motion for summary judgment on March 24, 1998, along with a memorandum in support, a copy of an earlier decision in this case, a copy of an earlier motion for summary judgment directed to a different defendant, and an affidavit of Frank Yaworowski, a Vice President of Webster. The plaintiff also incorporated earlier documentary evidence, including the note executed by Mark Germain as Managing Partner of RCA. Webster moves for "judgment as to liability enter in its favor and on the special defenses raised by defendant Vito Mazza . . ." (Defendant's Motion for Summary Judgment.) The defendant, Vito Mazza, has filed a timely memorandum in opposition to the plaintiffs motion for summary judgment.
"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 578, 573 A.2d 699 (1990). The defendant, while raising a series of allegations in his memorandum in support of his objection to the plaintiff's motion for summary judgment, offers no affidavit or documentary evidence to support his allegations. All of the defendant's contentions center around the ability of Mark Germain to execute the note on behalf of RCA. As will be discussed below, such issues are not material to the disposition of this motion.
The defendant Mazza's ten special defenses are as follows: (1) the promissory note was executed not on behalf of RCA but by Mark Germain acting on his own behalf; (2) the note was executed without consideration to or the authorization of the defendant Mazza; (3) the loan described in the note was made to Mark Germain personally, not on behalf of RCA; (4) any monies borrowed by Mark Germain purportedly on behalf of the partnership were borrowed without actual or apparent authority of the defendant Mazza; (5) Mark Germain knowingly or negligently misrepresented crucial facts about a development project, that the plaintiff knew or should have known these facts, and that Germain's intent was a scheme to defraud defendant Mazza: (6) Mark Germain did not have authority to execute the note on behalf of RCA; (7) Mark Germain did not execute the note for the carrying on of the CT Page 1913 business of RCA, and as such, he acted without authority; (8) the plaintiffs release of one or more of the partners of RCA effectively released the defendant Mazza; (9) the plaintiffs settlement with one or more of the partners of RCA has operated to relieve the defendant Mazza of any liability under the note; and (10) the plaintiffs failing to sue all the partners of RCA prevents judgment against the defendant Mazza. The first seven special defenses raise "personal defenses" as to the defendant Mazza's liability for the obligations described in the note. Personal defenses are those defenses "that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract." Conn. Gen. Stat. §42a-3-305 (b). These personal defenses include failure of consideration, usury, tortious interference and fraud in the inducement. See Funding Consultants v. Aetna Casualty Surety,187 Conn. 637, 640, 447 A.2d 1163 (1982); FDIC v. Weinstein,
Superior Court, Judicial District of Tolland at Rockville, Docket No. 054078 (August 16, 1995, Rittenband, J.); Campbell Leasing,Inc. v. FDIC, 901 F.2d 1244, 1249 (5th Cir. 1990). As such, they fall under the same analysis used by Judge Hodgson in deciding the plaintiff's motion for summary judgment against the defendant Michael Duchesne. First Federal Bank v. Realty CapitolAssociates, Superior Court, Judicial District of New Haven, Docket No. 304321 (December 9, 1993, Hodgson, J.).
The plaintiff claims that the first seven special defenses are all barred because of its status as a holder in due course under the federal holder in due course doctrine. Relying on the well founded reasoning in Judge Hodgson's earlier decision, this court agrees with the plaintiff. "The limitation of defenses as to a holder in due course under Connecticut law are set forth in42a-3-305 C.G.S." First Federal Bank v. Realty CapitolAssociates. supra. The defendant Mazza has not asserted that the plaintiff is not a holder in due course. "Federal courts have held that even if the FDIC or a successor holder of obligations of a failed bank does not meet a state law definition of holder in due course, it is entitled to the benefits of that status, and that `personal' defenses may not be asserted in defense." Id., citing Campbell Leasing, Inc. v. FDIC, supra, 901 F.2d 1249.
"Pursuant to 42a-3-305 (b) C.G.S., a holder in due course is not subject to the defenses that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract." (Internal quotations omitted.)First Federal Bank v. Realty Capitol Associates, supra. The CT Page 1914 defendant Mazza's first seven defenses are, on their face, defenses that would be available in an action enforcing a right to payment under a simple contract. These defenses must fail, "[s]ince the federal holder in due course common law counsels that the FDIC is entitled to at least as much protection from unexpected impairment of the value of a note as the Connecticut statute confers on holders in due course . . ." Id.
The defendant Mazza's eighth and ninth special defenses claim that the plaintiffs release of one or more of RCA's partners has effectively released the defendant Mazza. The defendant responds that the plaintiff is arguing under the mistaken assumption that the defendant Mazza's liability is that of a joint debtor, whereas the note calls for joint and several liability.
The characterization of liability is not essential in disposing of these two special defenses. "[T]his jurisdiction and others no longer follow the rule that a release of one defendant releases all joint defendants . . ." Gionfriddo v. GartenhausCafe, 211 Conn. 67, 73, 557 A.2d 540 (1989); see also C.G.S. § 52-142; 2 Restatement (Second), Contracts (1982) § 291: 2 Restatement (Second), Judgments (1982) § 49, comment b. Although the settlements with other RCA partners may be used to set off any judgment against the defendant Mazza, such settlements do not negate the obligations of defendant Mazza. "Only if the payment were in satisfaction of a judgment in an action in which the measure of the plaintiff's loss was actually litigated would the plaintiff be unable to recover a judgment against [this] defendant." Belanger v. Valage Pub I,26 Conn. App. 509, 516, 603 A.2d 1173 (1992). Accordingly, neither the eighth nor ninth special defenses raised by the defendant Mazza provide a valid defense as to his liability under the note.
The defendant Mazza's tenth special defense alleges that the plaintiff has failed to sue all of the partners of RCA, and thus, may not recover from the defendant Mazza, based on the theory of joint liability of debtors. The plaintiff counters that the defendants' liability under the note was joint and several, as established by the terms of the note.
The plaintiff has filed an affidavit providing that RCA, through its managing partner, executed the note in question and later defaulted on this note. The affidavit also provides that Webster acquired this note after merging with FFB, who had CT Page 1915 acquired the note from the FDIC. The note states in pertinent part that "[t]his note shall be the joint and several obligation of all makers and endorsers, and each provision of this note shall apply to each all jointly and severally and to the property and liabilities of each and of all." The defendant Mazza has failed to offer any legal authority or evidence as to why the plain terms of the note should not apply.
In conclusion, there are no issues of material fact as to the existence of the note, RCA's default under the note, and the defendant Mazza's role as a general partner of RCA. The defendant Mazza has not raised any defenses sufficient to preclude his liability under the note as a general partner of RCA. Accordingly, the plaintiffs motion for summary judgment (#200) as to the liability of the defendant Vito Mazza will be granted.
HARTMERE, J.